18-0588, Richard Lindblom v. Sears Roebuck & Co. All right, will the attorneys and Lindblom please approach. And please state your name, tell us who you represent. Paul Burks, representing the plaintiffs' relators, Richard and Ralph Lindblom. Good afternoon, Your Honors. Jeffrey Buchholz, representing the Hope Depot. All right, and Mr. Burks, how much time would you like? For a rebuttal or for anything entirely? Well, why don't you tell us how much you would? Keep in mind that we have read the briefs, we are familiar with your arguments, we're familiar with the record. With that in mind, how much time would you like for your argument? Can I have 20 minutes with three of that for rebuttal, please? Sure. And I'm sorry, could you spell your name for me? Sure, it's B as in boy, U-C-H-O-L-T-Z, Buchholz. All right, Mr. Buchholz, and how much time would you like? I think 15 minutes should be sufficient. It's an afternoon argument, I want to be respectful of your time. Oh, you're a chipper and ready for you. So, Mr. Burks, whenever you're ready, and then we'll hear from you. Thank you. Good afternoon, and may it please the Court. My name is Paul Burks, I represent Richard and Ralph Lindblom, who are the plaintiffs' relators in this Illinois False Claims Act case. This is an appeal of an order granting Home Depot's motion to dismiss and denying plaintiffs' motion for leave to file an amended complaint. The complaint alleged a single claim for relief under Section 3 of the Illinois False Claims Act for knowingly avoiding an obligation to the state. Specifically, the core allegation is that Home Depot is a retailer, that it sells tangible personal property, that among the tangible personal property it sells are dishwashers and microwave ovens, that it also offers installation services, that the offering of installation services does not alter its obligations as a retailer to collect and remit retailers' occupation tax. Yet, when it sells dishwashers and microwave ovens in conjunction with these delivery and installation services, it does not collect and does not remit retailers' occupation tax. The Lindbloms discovered this. They brought their information to the Illinois Department of Revenue in February of 2015. The department then did its own investigation of that information and issued a compliance alert in June. Hadn't they brought something earlier? They did, they did. They also brought this information to the Department of Revenue in 2004 as well. They mentioned Home Depot and Sears in that correspondence with the department as well, and then they brought the same issue to the department's attention in 2000. So, after the first time that they brought it to the attention, the department did send out something? In 2004, I believe the department issued what they call a general information letter, a GIL, which sort of generally spoke about what the requirements are for retailers' occupation tax, but it wasn't specific as to this issue. So, it didn't really resolve the issue for the Lindbloms or for their customers. So, it brought the information back in 2015, and this time the Department of Revenue did issue a compliance alert where it explained and reaffirmed that the sale and installation of an appliance is still a retail sale subject to ROT. The Lindbloms then did their own further investigation to see if the practices had changed at Home Depot and other retailers, discovered they had not, and then brought this claim under the Illinois False Claims Act. So, the complaint asserts that by carrying out this scheme, Home Depot is knowingly avoiding its obligation to the state. Namely, it's avoiding its ROT on each of the sales of dishwashers and microwave ovens that it also arranges for installation for. But it is obligated. Any retailer is obligated if they're acting as a construction contractor to pay a use tax. Construction contractors have to pay use tax on the cost price, the amount they pay for it, on the cost of the item. But there's a specific regulation, Section 130.1940, that sets forth exactly when a construction contractor is subject to that exemption and when it's not. And specifically, it says a construction contractor doesn't have to pay,  that it's incorporating into a structure as an integral part thereof, as an incident to a construction contract. So, what we pointed out in our briefs is materials, those have actual real meanings. Materials and fixtures are something that the law recognizes. Materials are like lumber. They're incorporated into the building. Bricks, they become walls. Fixtures, they maintain their own independent identity after they're incorporated, but they're affixed to the property in a way that removing them would cause damage. Think boilers or tubs or sinks. Those are fixtures. So, materials and fixtures, when construction contractors sell them as part of the contract, think of the construction of a home where you would build the home or remodel the room and you would include with it materials and fixtures. A bathroom, you would include the tub. Those are exempt. When you build a home, you include a refrigerator in it, a stove in it, an oven in it, and those, under your definition, would then not be fixtures? Under the definition that's in the regulation, they would not be fixtures because Section B-2 of that regulation specifically says that ROT is still due, is due on the sale of refrigerators, washers, dryers, stoves, and other, quote, portable equipment of this kind which may be connected to and operated from a building's electrical or plumbing system, but which is not actually a part of such a system. So, they've given you examples, fridges, stoves. These are not fixtures. These are appliances. Appliances tend to be personal property. And a dishwasher and a microwave oven, they fit right into B-2 with these other appliances, Section B-2, which says ROT is due, and they don't fit into Section C, which requires it to be materials or fixtures incorporated as an integral part of the structure itself. So, the trial court did not rule on that issue. They ruled with the plaintiffs and said that they had alleged at least a scheme to avoid the payment of ROT. What the circuit court held was that it was a very specific holding, that the Third Amendment complaint didn't state a claim for a violation because it didn't allege a specific sale on which Home Depot had failed to collect the ROT that was due. So, Lowe's was also a defendant in this case. In the complaint, a specific sale was alleged with respect to Lowe's. Lowe's was not dismissed from the case, and that claim is pending on summary judgment in the circuit court. So, what would a specific sale have added to your claim? I agree, Your Honor. It would not have because what we alleged was that all of the sales, they're not paying the ROT on. So, we allege, for example, that when we went to get a quote from Home Depot, their salesperson said, Home Depot doesn't charge you the tax when they install the appliance. That's just how Home Depot does it. So, we've already got admissions from their own agents who engage in these sales that they do not charge tax when they also provide the installation. There may not be admissions in terms of considering them binding, but there's certainly evidence. There's certainly evidence. And if, for example, we were to go to trial and we were to call as witnesses their sales agents to say, in order to prove that they were not collecting the tax, that would certainly be added. Or their sales records. Or their sales records. Whatever. Certainly. So, the idea that we needed this specific allegation of a specific sale seems superfluous, that it's a particular type of evidence. We cited on pages 14 and 15 of our brief some federal cases that have adjudicated, under the Federal False Claims Act, the same provision, an identical provision, that we're litigating under in the Illinois State Act. And they have identified the pleading standard for this type of a claim as, you have to plead details of the scheme to avoid the obligations, along with reliable indicia that lead to a strong inference that obligations were avoided. Are there any cases that have held you need a specific sale? No, there are not. There are not any cases that have held that a specific sale is needed at the pleading stage. At the pleading stage. No, there are not. And so, I mean, we feel like that's a pretty good standard. I mean, that standard makes sense. Reliable indicia that lead to a strong inference that obligations were avoided. I don't know that it's that different from just the standard, pleading standard of, you know, can you plead facts that have proven a trial would support the judgment. But we did. I think what Home Depot is saying is that you have to plead the fraud standard under Illinois law. They are saying that, that we have to plead the, like the 9B or the detailed fraud standard. I don't think that that's right. And I also don't think that's mattered. I don't think that it's right because there was the Illinois appellate court case from 2016 that said that the amendments to the Illinois False Claims Act in 2010 actually removed the requirement of a specific misrepresentation with respect to this avoiding obligations to the state aspect of the statute. So, you don't need to plead a specific misrepresentation. So, it sort of doesn't make sense to require you to plead a misrepresentation with that kind of particularity. So, but leaving that aside, I think that even if we were required to plead, you know, with specificity, I think the pleading of the admissions by the sales agents pleads sufficient specificity, strong inference, that it pleads enough facts that you lead to a strong inference that they've actually avoided their obligations because their employees are saying that that's what we do. Furthermore, we did move to amend the complaint. Assuming for a moment that the kind of specificity that Home Depot wants is required, the motion to amend the complaint, the proposed amended complaint, included a specific allegation of a specific sale. And that was a transaction that took place a couple of years before the motion to amend, right? Correct. What was the excuse for failing to bring that out earlier? Well, the excuse was we didn't think we needed it. We thought we had pleaded a sufficient complaint without a specific transaction. And, in fact, the judge in the hearing on the motion to dismiss our second amended complaint agreed. He said, I don't think a specific transaction has to be pleaded. You've got to plead something that shows us that, you know, that they're avoiding their obligations, but a specific transaction. You quoted that in your brief. I don't understand. How did the judge say that? Obviously, by the time of the third amended complaint, what happened? Well, judges do change their mind. Judges do read briefs again, and they come to different conclusions. That happens. Was that brought to his attention? What's that? Was that brought to his attention? I don't think it was brought to, specifically brought to his attention that, oh, hey, you flip-flopped on this.  I don't think he wanted to say that. Yeah, I didn't. But we did, I did, and honestly, I thought, well, okay, we can plead that. If that's what's required. But it took you quite a while after the second amended complaint was dismissed to come back and say, oh, I have a transaction. Wasn't it several months? It took a couple of months. Yeah, okay. But we did come up with a transaction within the period of the statute of limitations. Within the period that we're litigating, we have a transaction. But we also have the admission. So I did think it was kind of belt and suspenders, that we could come back in and do what the court asked and plead the specific transaction, which would satisfy any specificity of pleading. It says who. It says what. It says where. It says when. The transaction itself does reveal all of that, and it cures whatever the problem was in the third amended complaint, and it does so without any prejudice to the defendants, because we're still in the pleading stages and very early in the case. So on either ground. In a 15-L case, you're early. Well, keep in mind on these False Claims Act cases that the attorney general gets to keep them under seal for a long time. So there was a full year before that happened. And then in 2016, there were some amended complaints, and then we had two briefings on the motion to dismiss. So in the lowest case, for what it's worth, we are at the cross motions for summary judgment awaiting a decision in trial. So we are moving the case as quickly as we can. So on either grounds, either because the third amended complaint did plead a violation, or because the fourth amended complaint cured that problem, I think that the circuit court's decision should be reversed here. I want to address one other issue that the defendants brought up in their appellee brief. What I've addressed so far is really the circuit court's decision. The Home Depot has sort of raised additional arguments to defend the judgment on alternative grounds, one of which is the public disclosure bar, which they brought up in their appellee brief. Was that brought up before the trial court? It was, and the trial court rejected their argument on that. It held that the public disclosure bar did not bar the complaint, but they've resuscitated it here. I think that that's permissible, that you can defend a judgment on other grounds, and so I would like to just address that briefly before I move on. You're talking about the Milwaukee Journal article? The Milwaukee Journal article. That's exactly right. There was a newspaper article from the Milwaukee Journal that talked about Home Depot's tax collection practices in Wisconsin. And the court did find, the circuit court did find that was a public disclosure. We think that that was error because what the Milwaukee Journal article says is that Home Depot is following the law in Wisconsin, but Wisconsin law isn't Illinois law. It's the opposite, isn't it? It's different. It's the opposite. We would propose that it's the opposite, that it's a different state. Each state has its own sales tax law. There is no law like the retailer's occupation tax. That's a unique Illinois structure, and the requirements under it are different than Wisconsin. So the idea that because someone is not collecting tax in Wisconsin, they therefore, that somebody in Illinois or the Department of Revenue in Illinois should know that they're also not collecting tax or violating Illinois law is not, I mean, that inference is not a fair one to draw. And the public disclosure has to be a public disclosure of fraud, right? It has to be a public disclosure of fraud. There's no fraud alleged against Home Depot in the Milwaukee Journal article. Yes, Your Honor. Turning to the original source, which is where the circuit court actually did agree with the Lindbloms, that even if there were a public disclosure, that they were the original source, there's no question that their information was independent, that they did the investigation. They found the information without reading the Milwaukee Journal article. That's what independent means within the statute. And then the question is really, was it material? And I think the circuit court's answer on that is correct. The circuit court basically said, look, the proof's in the pudding. After they revealed this information, the Department of Revenue acted on it. The Department of Revenue issued the compliance alert, you know, reaffirming what the law was. The Department of Revenue audited a couple of the Home Depot's competitors. Right now, pending in the circuit court is a claim by the Department of Revenue or an assessment of the Department of Revenue's assessment against Best Buy. Pending in the tax court, which has been stayed because of bankruptcy, is the Department of Revenue's assessment against Sears. So you can see that what the Lindblums did, the information they gave to the Department of Revenue, was material because the Department acted on it. So even if there were a public disclosure, we feel like the complaint would survive under the original source exception as well. I know I didn't use my full 17 minutes, but I think at this point I will cede the mic to Home Depot and then reserve my three minutes for rebuttal. Thank you. Thank you. Mr. Buchholz. Thank you, Your Honors. I'd like to start with why this is a fraud claim and why the fraud standard for pleading does apply and the two dimensions of the fraud standard that I think the circuit court correctly held that the relator should not satisfy. So it is true that in 2010 the reverse false claims provision of the statute was amended. Now there's three ways that you can commit fraud and violate the False Claims Act. In the reverse false claims context, it used to be always had to have a false statement. That was the means that you had to use to commit fraud. Now the fraud can take a variety of forms, including but not limited to a false statement or a false record. But knowing an improper avoidance of an obligation, which is the theory here, under the False Claims Act is still fraud. It's still the False Claims Act. And anyway, my friend told the court below that this is a fraud claim, and therefore you have to state with particularity. That's at page C962 of the record of the hearing. So what's missing from the complaint that would state a claim for fraud? Right. So there are two important parts of the fraud standard. This is from AC&S, from the Supreme Court, from Mary Lee's, from this Court, from Prime Leasing, from Your Honors. I know there's hundreds of cases that talk about the standard for fraud. One part of it is specificity. Usually it's described as the who, what, when, where, why, and how. The other part is equally important. It's that the allegations have to give rise to a necessary or probable inference of fraud. And so here we have both problems, and they're related. And this is an important point because Your Honor asked the question, what would adding information about specific transactions add? Why would that matter? And the answer is it would matter because it's impossible to create a necessary or probable inference of fraud here without knowing more facts, without knowing more about. What more do you need to know? I mean, they laid it all out in the Third Amendment complaint. What would the fact that one instance, one specific instance out of hundreds of sales, how does that help? You know exactly. You seem to know exactly what's being done. I'm sorry, Your Honor. The answer is because under the tax law, under the administrative code, 130.1940, the provision that my friend cited, there isn't a black letter rule that if you install an over-the-range microwave or a dishwasher, you pay ROT. This provision does not mention over-the-range microwaves or dishwashers. It's a long, complicated provision, as I'm sure Your Honors have seen. Well, what does that have to do with a single sale? If it's not a single sale as a microwave. Because the circumstances of the sale matter. How does the circumstances matter when it's a question of whether it's taxable or not under the provisions of the law? Because, Your Honor, what determines how it's taxable? Let me take a step back first. There's no dispute here that either sales tax to the customer and ROT by the retailer is due or use tax by the retailer is due. So it's not whether taxes are due, it's which taxes are due. And the answer to that question, under 130.1940, turns on the circumstances. Again, the reg doesn't mention dishwashers or microwaves. It doesn't say anything specific about them. What it says is that where fixtures were – I'm sorry, let me find the exact provision that I want to refer Your Honors to. It's the construction contractors, B, when liable for tax. So my friend cited part of B2, which refers to where portable equipment is connected to an electrical or another system of a building but is not actually part of it. Well, how do you determine whether it's just plugging something in or whether it's more – But that has nothing to do with the specific sale. I mean, the fact that they have a sale on microwave or whatever it is, that doesn't say anything more than what they – they've already said what type of equipment they're talking about. That they didn't collect the tax on. So a specific incident isn't going to help one iota. I don't see how it could possibly help you answer this complaint. Let me try one more time, Your Honor, because this is an important point. When you read 130.1940 and when you read the private letter rulings and the general information letters, all the guidance over the decades that the Department of Revenue has tried to provide about this, you will see that the answer to which taxes due, whether the person is acting as a construction contractor or is acting as a retailer, depends on the circumstances. To give you an example, this is C-87 in the record. This is a 2013 private letter ruling where the taxpayer there is arguing for treatment as a retailer. They're arguing against construction contractor treatment. So it's the opposite of this case. The taxpayer sold racking systems for a warehouse. The taxpayer explained that the racking systems were bolted to the floor. They're not freestanding. They're bolted to the floor. But the taxpayer said they're typically intended for only a few years. They're reconfigured because of the work of the warehouse after a few years. And you can detach them from the floor, the taxpayer said, with no or minimal damage to the floor. So the taxpayer said, these are just portable, this is just portable equipment. This isn't a fixture. This isn't something that becomes integrated with the real estate. The Department of Revenue disagreed and said, no, because of the circumstances here, it appears that the parties intend this to be part of the real estate. The Department of Revenue said two things that are important in that private letter ruling. One is, it's an intention test. It matters what the parties to the transaction intend. Do they intend this property? Just so I, and I read that argument in your brief. And so your view of the sufficiency of the complaint would be that an adequate claim would be that the customer that Mr. Burks identified intended to take that microwave with them when they left that house, whenever it would be. And so, therefore, Home Depot should have collected sales tax on that. Your Honor, intention is certainly something that the Department of Revenue has said matters. But that private letter ruling goes on to say is where there isn't clear evidence of the party's intent, you look at the degree to which, the extent to which the property is connected to, is integrated into, is built into the real estate. So let's take an over-the-range microwave. There's a cabinet that the microwave slides in and you put in the plug. But how is it connected to the real estate? Because it isn't always that simple, Your Honor. And the facts of how any particular over-the-range microwave is installed and what degree, again, it's the extent to which under this private letter ruling that matters, the extent to which it's connected to the real estate. If you simply plug it in, like you would with a freestanding appliance, then I don't think there's a dispute. But that's not the way over-the-range microwaves work. And so, does Home Depot then, in each transaction, do they instruct its sales people to ask the customer how they intend to install this appliance? To determine whether they should charge sales tax or pay use tax? So, Your Honor, we're here on a motion to dismiss and the allegations of the complaint are the allegations of the complaint. So I don't know all of the facts. I agree with that. And that's why I question what you're saying because you seem to be arguing on the merits of the question for the court to decide once he answers the complaint. It seems to me that the complaint itself definitely makes the statements of what's necessary under the False Claims Act. And you're saying, well, this doesn't apply. But that's your defense. But as far as the allegation is concerned, a specific sale isn't going to make a difference one way or the other. We're talking about thousands and thousands of sales where Home Depot did not pay the tax. If it were true, Your Honor, it's not for the reasons that I've tried to explain. If it were true that the tax laws specifically called out, for example, dishwashers and said, sales even with installation of dishwashers never trigger the construction contractor provision, always trigger ROT, then perhaps all you would need to know is sales of dishwashers with installation and not payment of ROT. That's not the way the tax laws work. And, again, the standard for fraud pleading is necessary or probable inference of fraud. I think it's also important to take another step back here and think about the fraud scheme that's alleged here. So, again, this isn't about paying tax or not paying tax. It's about which tax is paid. And there's evidence in the record below that the Department of Revenue not only knew about these issues as long ago as 1985, one of the first private letter rulings that we cite, long before the Lindblums came on the scene, but the Department of Revenue audits Home Depot. The Department of Revenue is auditing Home Depot on the precise transactions at issue in this case. And as of the time that an affidavit to this effect was submitted below, the Department of Revenue had not found any kind of a scheme like what the relators are alleging. Well, that depends on the facts. Again, that does not go to the pleading. That's a motion to dismiss. But, Your Honor, again, it's a motion to dismiss a fraud claim. And there is lots of precedent that requires fraud claims to be pleaded. It's a motion to dismiss a claim that a tax was not paid that should have been paid. I would suggest the Court look at Merrilee's, the case I mentioned before, where there were fraud claims alleged that were pleaded without an explanation of why, of who exactly said what, why that was false, and what the specifics of the fraud were, and where the Court reemphasized that a fraud claim has to be not just plausible. This isn't just fact pleading. It isn't notice pleading. It isn't the standard for plausibility that applies in federal court.  This is a case where the Department of Revenue knows exactly what we're doing because they audit us and we pay tax. It's just a question of the claimant's claim to the state. And that's going to your defense. See, the plaintiff is alleging that the Department of Revenue audits Home Depot and knows all about these sales and hasn't done anything. That's not part of the complaint. That's a defense. But, Your Honor, I would suggest the plaintiff can't take that issue off the table artificially by not saying something about it when everyone knows, when it's judicially noticeable that the Department of Revenue audits taxpayers, and when in fact there's evidence specifically in the record about that here. But it doesn't go to pleading. It might go to summary judgment. It might go to judgment on the pleadings. It doesn't go to a motion, a sufficiency of the claim, 2615. Well, I think under the necessary and probable inference of fraud standard, you can't disconnect the facts that are pleaded from the reality of the situation. You have to analyze whether what's pleaded actually does give rise to a necessary or probable inference of fraud. If Your Honors don't agree with me about that, I want to make sure I at least briefly address the public disclosure issue here. The point of the public disclosure bar is. No, I think we understand the point. But the point is, where was the disclosure? Well, so. Milwaukee Journal article? Milwaukee Journal article is a disclosure. The private letter rulings and the general information letters that we cited also. Do you disagree that Lindbrum had something to do with those? Not the ones from 1985. Not the ones from 2000. Not the ones from 1993. Not the ones from 2005. We're not talking about 1993. We're not talking about 1993. Well, I am, Your Honor, because the Department of Revenue knew all about these issues. That's before the period. We're talking in the 2000 and what, 2002, 2003, and 2015. That's what we're talking about. That's the period of time we're talking about. So 1993 is meaningless. Let me try to explain why I don't think it's meaningless. The public disclosure bar asks whether there's been a public disclosure of the allegations or transactions in this case. So here, the allegations or transactions in this case, the relator's theory that Home Depot and others are paying the wrong tax on these kinds of transactions, was publicly disclosed as early as 1985 in a private letter ruling. So the public disclosure bar. Did that ruling have something to do with Home Depot? The taxpayer's identity is redacted. So there was nothing about Home Depot? We're talking about Home Depot here. There's lots of cases that we cite in our briefs that make the point that the point of the public disclosure bar is if the government is already on the trail of the alleged fraud, if it already knows what it needs to in order to go after the alleged fraud, it doesn't need the relator's help. It shouldn't have to pay a relator's share. That's the point of the public disclosure bar. Here, the Department of Revenue, if there was a fraud here, the Department of Revenue thought that the state was being defrauded, which is, again, what a False Claims Act case is supposed to be about. We would all know it because the Department of Revenue would have come after Home Depot and would have asserted that fraud. That's an assumption you're making, yes. Here, the state not only declined to intervene, but there's evidence in the record that the Department of Revenue was auditing and found nothing. We've already, in the Best Buy case, we've talked about that, right? I'm not arguing that the government action bar applies. That's a different issue. I don't mean that. But the point is that the allegations here have been publicly disclosed for decades. They have not been publicly disclosed. The Best Buy, the Wisconsin article had nothing to do with Illinois at all. In fact, it's the opposite situation, Illinois. And we're not talking about 1993. You could say something was disclosed in 1842. I mean, it's totally irrelevant. We're talking about a period of time. Maybe they were doing it at one time and they changed their practice. We're only talking about a specific period of time. Okay. Then I would focus, Your Honor, on the 2010 general information letter that's at C-80, where, again, the way these work is the identity of the taxpayer requesting the guidance is redacted. So I don't know who the taxpayer was. But when you read that letter, the description of what the taxpayer is doing and the guidance that it's seeking looks an awful lot like what the allegations are against Film Depot. It looks a lot like it. But it isn't. But it isn't. I mean, when you say it looks an awful lot like, that's not the same. Your Honor, I don't think it's an accurate statement of law, and we cite lots of cases in the brief on this, to say that the public disclosure bar requires 100 percent identity and specificity between the news media article or the other disclosure and the allegations. Then it would be impossible to ever have the public disclosure bar applied. Because the relator would always plead something a little bit different from what the public disclosure was. But it has to be something specific to the defendant. Because what you're doing is pointing to the general information letter in 2010 and saying somebody else is engaging in this practice, and that we should assume that every big box retailer, including Home Depot, is doing the same thing. It's not just that letter, Your Honor. It's also the Milwaukee Journal article, which does specifically refer to Home Depot. It does describe what it does in Wisconsin, which was in compliance with Wisconsin tax law. Well, and we think that the allegations that are made against Home Depot here describe compliance with Illinois tax law. But the point is, I understand, but the point is when you combine the Milwaukee newspaper article, which does mention Home Depot, with all of the Illinois Department of Revenue public disclosures about these issues, that was more than enough for the state to be on the trail of this alleged fraud. Now, I can't understand how, if an article is in the New York, or the Rochester, New York newspaper, about New York law, it doesn't have to be just because Milwaukee, it doesn't matter. You're saying some article in some newspaper, once upon a time, someplace, that has different law of that state that mentions your client, that's enough. Even though the law is completely different, right? Am I right? The law is different in Wisconsin? Well, it's not completely different. Well, it's different, though. Isn't it different? It's not identical, but the same issue. Well, it's not what we're talking about here, though. We're talking about Illinois law. Right, but Illinois law, the issue in this case, is the same distinction that that article highlighted under Wisconsin law between a construction contract and a retail sale. So, yeah, Illinois law is a little bit different from Wisconsin law in that regard, and the article was about Wisconsin, but it's the same basic issue of how you decide how much integration into the structure is enough to transform a retail sale with installation or plugging something in into the kind of installation that makes something part of the realty. That's the same issue. It's the issue that that article was all about. So I do think that, as the trial court concluded, that that was a public disclosure, and then the issue becomes original source. I just want to say a quick word about original source, because it's responsive to a question that Your Honor asked my friend. So Your Honor asked, didn't the trial judge say you don't have to plead a specific transaction and then flip his position, and that's the argument that the other side makes, that it was unfair to dismiss the complaint because of the failure to plead that kind of specifics when the court had said that that wasn't required. That's not really what the court said. If Your Honors look at this, this is the April 4, 2017 hearing on the motion to dismiss the second amended complaint, page C980. If you read that page in the whole context, what the court is talking about there is the original source issue. The court is not talking about whether 615, whether the pleading standard requires the kind of specifics that you're talking about or not. So the full quote is, this is the court saying, I think the failure to collect and tender the tax, a relator telling the state, we have evidence that this particular taxpayer in this particular transaction failed to collect and tender a required tax, would perhaps be very good independent evidence which materially advanced the matter, but isn't the sole type of evidence or information which they could provide to the state. That's clearly talking about original source, because the original source issue turns into, did the information the relators provided to the state materially add to what the state already knew? Because if not, again, there's no point in letting the relators take a share of what the state might recover. So that's what the court is talking about. The judge did not rule, did not say that the relators don't have to plead. So where in the transcript did the judge say, I agree with you, Home Depot, he has to plead a particular microwave purchased on a particular date in which Home Depot did not charge sales tax? In the hearing on the motion to dismiss the second amendment complaint, the judge did not say that specifically. But what the judge did say over and over again, in the context of original source, is you don't have to plead your evidence, but you have to plead something. This is a fraud claim. You need more specifics. And over- They come back and maybe they rearrange the paragraphs a little bit, but they came in and said, number one, the Lindblom's father worked for Home Depot for several years, and he was personally familiar with the fact that they didn't charge sales tax on these types of appliances, that they spoke to a salesperson about a particular appliance, what would Home Depot charge, and the salesperson, and it's within that person's job description to make these representations, said to them, we don't charge sales tax on this. What more do you need? Well, just to get back to your question about what the judge said at the hearing, because I want your Honor to understand the context, at the hearing on the motion to dismiss the second amendment complaint, even though the discussion about particularity and specificity was in the context of the original source issue and not the 615 issue, what Mr. Burke said repeatedly is we can plead the- This is what I'm quoting now is 984. We can plead the allegations with more specificity and plead what we disclosed to the State with more specificity as well. And then he didn't. He doesn't have to. The question now is, does he have to? And the judge said, he does, and that's what you're defending. And the question before us is, does he or doesn't he? I understand. The only point I'm trying to make is if your Honors agree with us that that kind of pleading specificity is required because this is a fraud claim, then your Honors might consider the appeal of the denial of reconsideration. My only point about that would be there's no basis to say the trial court abuses discretion in denying reconsideration. Reconsideration is inherently a very discretionary thing. The trial court doesn't have to endlessly entertain new challenges to its rulings. And here, where the relator's lawyer said on April 4, 2017, I will do this, and then he didn't. And then at the hearing on the motion to dismiss the third amendment complaint, the trial judge, where the judge says I'm going to dismiss this because of the lack of specificity, he asks, let me make sure, do you have specific transactions and you just neglected to put them in your complaint? Or would you have to go find specific transactions? And the answer was from the relators that they would have to go find them. They could find them. It wouldn't take too long. They're confident they could find them. But the answer was clearly we don't have them. It's not that we have them and we just didn't think we needed to put them in our complaint. We don't have them. We can go get them. Would you agree that the proposed fourth amendment complaint with the specific transaction, who, what, when, where, how much, was sufficient? I would not. Because as I was trying to explain earlier on the necessary and probable inference of fraud standard, alleging one transaction, and all that's alleged there, I mean, there's a receipt. The receipt doesn't, there's no information in the complaint or in the receipt that's attached to it about what degree of integration with the structure was required to install that particular appliance. All you have is the bare allegation, the bare example of a sale with installation and no sales tax showing on the receipt. You have no other information to put that into context. So you have no ability to judge whether that is probably a violation of the tax law or not. Because the tax law requires you to know more about the circumstances. Oh, does it or doesn't it? Would you agree that Home Depot does not charge customers sales tax on dishwashers and over-the-counter microwaves when customers also contract to have the appliance installed by Home Depot? I mean, that's the allegation. Do you agree that that's what they do? Again, Your Honor, we're here on a motion to dismiss, and I don't want to make a factual statement that goes beyond my knowledge. That's a blanket statement that would apply the way Your Honor phrased it. So you're saying that they have to come up with every single situation, every single sale for the last period of time that they're asking for? Does that satisfy you? I mean, you say one is not enough, and whatever they gave you is not enough. I mean, Justice Mason is trying to find what's enough. What would be enough? I'm not saying, let me answer your question, I'm not saying that they would have to plead specifics as to every transaction that they say is a violation. Certainly not saying that. But in lots of federal cases where this issue comes up under Rule 9b, in the regular and reverse false claims context, the rule is generally that you do have to plead examples, representative examples of the false claims. And, you know, one is usually not enough. Is five enough? Is ten enough? It depends. So I don't know what the number is from that perspective, but more importantly than the number is information about the circumstances relating to that transaction that would enable the court to decide whether there's a necessary or probable inference of fraud. And under the tax laws, it's not enough to say this is an over-the-range microwave, therefore, ROT is due. That's not the way the tax laws work. Do any of those federal cases have a statement from a representative of the defendant that we do engage in this, what the plaintiff claims is a fraudulent practice? Well, I think the common fact pattern in a lot of the federal cases is, as Mr. Birx described it, there's allegations with some degree of specificity about the alleged scheme. And then you don't have allegations with any specificity about the claim. It's about the actual violation, because the act requires the avoidance of an obligation or it requires the submission of a claim. So you have an underlying course of conduct that might be alleged, you know, by a former employee who would actually have a basis to allege that, unlike here. Like Mr. Lindblum. Well, Mr. Lindblum. I worked there in 2005.  I don't know about that, Your Honor. Well, okay. The Lindblums do not have the list of Home Depot's customers that bought microwave ovens, over-the-range microwave ovens for dishwashers. They don't have that list. Home Depot has that list, but Lindblums don't have that list. So the only way they could do what you're suggesting is to have sort of straw buyers go in and sneak in and buy a dishwasher and get the receipt and carry it back to the Lindblum so they could attach that to their complaint. And they would have – and you're not telling us whether they'd need one of those for a dishwasher or one of them for a microwave or whether they'd need ten or whether they'd need 30 or whether they'd need 50. You're not telling us what number they would need of that, but you're clearly saying that this one transaction that they did include is not enough and that the affidavit from an employee is not enough. So not knowing at this stage of the pleading who Home Depot's customers are, how were they ever supposed to plead a case? Well, Your Honor, Lindblums are competitors. They're not typical relators or insiders who have the kind of information that you need to show fraud. Well, these aren't whistleblower cases where there's some employee of Home Depot saying to the state, hey, look, our bosses are cheating the state. This is a whole different thing. These are outsiders that don't have access to that information until the case gets to a different stage and there's some discovery. So you're complaining about the pleading, but you're not defining how they're going to ever – they could never plead what you want. If a certain person wants to be a relator but doesn't have the information necessary to satisfy the standard for pleading a claim, then they can't satisfy the standard. There's no rule that you adjust the standard to permit the type of person who's the relator. I'm not suggesting you adjust the standard. I'm saying that they've met the standard. They have an affidavit and they have one transaction, and that's an exemplar of what's going on here. If Your Honors think that that meets the standard, then Your Honors can think that. For the reasons I've tried to explain, I don't think that's – 10, 15? The information is more important than the number. Again, the most important point that I'm trying to make here today is you can't make any judgment about whether there's been a violation of the tax law without knowing more information about the circumstances. That's what the Department of Revenue keeps saying in all of its guidance, and that's what 130.1940 itself suggests. If the plaintiff alleges that Home Depot doesn't care about the individual circumstances, that it never charges sales tax on these appliances, isn't there an inference of fraud there? I think under the fraud pleading standard that applies in this court, the plaintiffs have to do more than what Your Honor just recited. I appreciate all the time that Your Honors have given me. Thank you very much. Thank you, Mr. Buchholz. Mr. Berg, briefly. Thank you. I will just make a couple of brief points in rebuttal. One on the question of audits. Keep in mind that the claim here is that they avoided or concealed their obligation to pay money to the State. They say, well, we were audited, but we don't know what they disclosed in those audits. To say that the State maybe could have uncovered it had they done the right kind of audit we'll need to talk to the auditor and find out what they knew and what they discovered and what was hidden from them. I can say from the Lowe's litigation that we've been going through, they also raised the question of audits and they brought in 65,000 transactions and they said it was in here. The fact that we weren't paying the tax was in these 65,000 transactions, the auditor should have seen it. But they never brought in the auditor to say so. So it goes to what the court was saying earlier. This is a factual question. Whether they avoided or concealed from the auditor and from the Department of Revenue their practice is a question that we're going to have to uncover and discover on the audits. On the public disclosure, the reference to PLRs and GILs, we cited a number of cases in our brief that say that for a report of the State to be a public disclosure you have to identify the defendant or there has to be sufficient information that you can uncover who the defendant is. None of the PLRs, none of the GILs that they've identified come close to meeting that standard. And then I want to just talk for a moment and honestly it would just be to, I think, just to reaffirm what Justice Mason just said, which is to say that Home Depot argues that each individual transaction may or may not have been properly taxed based on the individual intent of each of the consumers. But what we've alleged is that they never charged the tax. When they sell a dishwasher or a microwave oven and the customer says, I'd like it installed, they do not charge tax as a matter of practice. That's what their employee said. That's what we know or what my clients know from their 30 years of experience in the business and having customers come into their shop. That's what they know from their father. They never charged the tax. So even if Home Depot was correct that there was this individual intent, and I think if you look at the regulation that they're citing, you will see it is not an individualized standard. Subsection B2 that I quoted earlier, which talks about refrigerators and stoves and washers and dryers and other portable equipment attached in the same way, says those items are always taxable. Even if you're a construction contractor, even if you install them, those items are taxable. It doesn't say dishwashers, true, but it says that those appliances and appliances that are installed like them are always taxable. We've alleged that they never charge the tax on those. So I think that's sufficient to allege that they're engaged in avoiding their tax obligations. And I think I will rest with that. All right. Thank you, Mr. Burks, Mr. Buchholz. Thank you for your arguments here this afternoon, your briefs.